IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


T‌ERRY L‌EE W‌ALKER,

        Plaintiff,


vs.                                    Case No. 11-1071-JTM


M‌ICHAEL J. A‌STRUE,
     Commissioner of Social Security,

        Defendant.


MEMORANDUM AND ORDER

Plaintiff Terry Lee Walker has applied for Social Security supplemental security income (SSI) benefits. His application was denied by the Administrative Law Judge (ALJ) on October 1, 2008, a decision affirmed by the Appeals Council on January 12, 2011. The single allegation of error by Walker is that the case should be remanded for the consideration of newly discovered evidence.

Plaintiff-claimant Walker was born in 1966. He has an eleventh-grade education, and no prior relevant work history. He contends that he became disabled on June 11, 2006, due to the consequences of a stroke which occurred after he had ceased taking his blood pressure medication. The detailed facts of the case, which are incorporated herein, are set

1

forth independently in the ALJ's opinion (Tr. 14-19), and summarized in the briefs of Walker (Dkt. 13, at 2-8) and the Commissioner (Dkt. 16, at 3-9).

The ALJ found that Walker had severe impairments of left cerebellar hemorrhage with developing hydrocephalus (with a history of craniotomy) and hypertension with left ventricular hypertrophy. However, these impairments did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P. Specifically, the ALJ noted that Walker did not meet the standards of listing 11.04, as he did not display any sensor or motor aphasia resulting in ineffective speech or communication, or significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross or dexterous movements or gait and station. In addition, Walker's hypertension was successfully controlled by medication, so he did not meet the standards for listing 4.01. The ALJ subsequently determined that Walker had a residual functional capacity which would permit him to perform simple, unskilled work.

After the denial of his SSI claim, Walker reapplied for benefits on February 7, 2011. This claim was granted, and Walker has begun receiving SSI benefits based on his 2011 application.

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that she is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R.

pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commisioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

The facts before the court indicate that Walker underwent a suboccipital craniotomy. After he was discharged from the hospital on June 19, 2006, tests showed that his

hypertension was under control that he had a stable and mild renal insufficiency. He denied having any headaches and could move without assistance (Tr. 195). Walker visited his primary care doctor a few weeks afterwards, and was doing well. His doctor noted that his balance and gait were normal, that he was awake and alert, and had no focal deficits (Tr. 222, 268).

Walker visited his surgeon on August 22, 2006, and again indicated that he was doing well, and had no complaints of headaches, vision difficulties, or gait problems, although if he stood up for too long he could become dizzy.  (Tr. 2460-47).

On September, 2, 2006, Walker visited his primary care physician and "report[ed] that he is doing fine insofar as his heart is concerned." (Tr. 269). His blood pressure was 124 over 40, and he indicated that he was doing fine with his medications. However, the doctor also noted that Walker stated "that his speech is slurred [and] balance ... impaired. He reports that his brain 'does not compute.'" (*Id*.) When Walker spoke of how expensive his medications were, his doctor worked to obtain alternative means of paying for the medication, warning that "discontinuation of this man's medications would be a major tragedy." (*Id*.)

Robert W. Barnett, Ph.D., conducted a mental status exam of Walker on November 21, 2006. Barnett's report indicates that Walker demonstrated only grudging cooperation with the examination:

> His effort and persistence in the questioning was unusually poor and the validity of his self-report appears virtually nonexistent due to his inability to provide any meaningful information about himself or his history. With

> regard to his speech and language, for the first several minutes of the interview it appeared that he was non-responsive to my questions and would not speak. However, he began making short answers to my questions when I indicated we would have to terminate the interview. He described his vision as "it comes and goes" and he said his hearing "will close up for hours". Rather than listing all of his "I don't know, I don't remember, I can't remember" responses to my questions, it can best be said that Mr. Walker's responses were un-useful.

(Tr. 273).

On November 30, 2006, R.E. Schulman, Ph.D., submitted a Psychiatric Review Technique which concluded that there was insufficient evidence of any mental impairment, based upon Walker's lack of cooperation. Schulman wrote that the "[v]alidity of [Walker's] self-report appeared virtally [sic] nonexistent due to this inability to provide any meaningful information" and that without any additional objective information, no assessment of his mental state could be made. Schulman did not that Walker "has made several calls to this office, w/no cognitive deficits noted." (Tr. 288).

On February 5, 2007, Walker's primary physician noted that his office had last seen Walker on September 28, 2006. After Walker called the office requesting a letter regarding his disability for his parole officer, his physician wrote a "Dear Sir/Madam" letter on March 22, 2007 stating that Walker was unable to work "[a]t least at the time of his last visit." (Tr. 296).

Michael Schwartz conducted a mental status examination of Walker on March 26, 2007. Again, the examiner found Walker uncooperative. Indeed, Schwartz wrote that Walker was "somewhat defense, irritable, almost surly," and that the results of any test

scores were probably not valid due to a lack of cooperation. (Tr. 297). He further reported that other portions of the psychological test indicated that Walker was malingering, with test scores which indicated that he "knowingly answered the questions incorrectly." (Tr. 298).

A few days later, on March 29, 2007, Dr. Aaron M. Lewis, D.O., examined Walker. Walker reported suffering from blackouts, headaches, syncope, and vertigo. Lewis reported that Walker's "blood pressure is under excellent control," and that he exhibited "no motor weakness or sensory loss." (Tr. 300). His speech also appeared normal.

On May 16, 2007, Walker visited Dr. Scott Rees for treatment of erectile disorder. Walker reported to Rees that, except for the erectile problem, "[h]e has otherwise been feeling well." (Tr. 320). He reported that he walks 30 minutes everyday for exercise.

On August 2, 2007, Walker called his primary care physician, who reviewed his medications. Walker reported that he had "[b]een throwing up a lot lately" and experienced "lightheadedness on occasion." However, he otherwise "feels ok – no symptom[s]." (Tr. 325). Walker called the office a few weeks for another letter for his probation officer. His physician then issued an identical "Dear Sir or Madam" indicating that Walker was unable to work as of the time of his last (2006) visit.

After the ALJ's decision, Walker's attorney arranged for him to receive a consultative examination on December 11, 2008 by neurologist Janice M. Mullinix. Mullinix reported that Walker

> comments on lapses of memory in which four to eight hours of time are just

> gone. These episodes occur three to four times a week. He apparently acts normally and behaves normally during one of the spells, but he has no recollection of what happened afterwards. He also describes frequent light-headedness and blackouts that occur about four times a week. He says they can occur anytime during the day or night. He also has severe headaches, enough to cause him to cry.

(Tr. 346). Mullinix's physical examination was unremarkable, and she thought it likely that Walker's brain injury might have caused a disability, but "we need more information to be able to prove that," and scheduled an EEG and brain MRI. (Tr. 347). After viewing the results, Mullinix stated that the testing showed "a large area of encephalomalacia in the left cerebellar hemisphere and a smaller lesion in the left posterior parietal region" which she believed was "consistent with the patient's claim of disability" and that significant impairment would be expected to result. (Tr. 394). The EEG showed no abnormalities. (Tr. 352).

Walker is now receiving SSI benefits based on his 2011 application. However, in the present appeal, Walker seeks a remand on the grounds that the Commissioner erred in failing to fully consider the impact of Dr. Mullinix's report. Stressing that the Appeals Council delayed issuing its order denying his appeal for over two years, Walker also argues that the ALJ erred in discounting both his credibility and that of his sister, who also provided hearing testimony. The court finds that no remand should issue, and the appeal should be denied.

Although the Appeals Council's ultimate resolution of the 2006 claim was delayed, the record indicates that much of this delay was the product of Walker's actions. On

November 6, 2008, Walker explicitly requested a delay in order to submit additional information. (Tr. 6). After a substantial delay not attributable to the Commissioner, the Appeals Council directed Walker on September 6, 2009 to submit any such new information within 25 days. Walker then submitted the report by Dr. Mullinix.

> The Appeals Council then considered the additional information, but found that
>
> it does not warrant a change in the Administrative Law Judge's decision. The new evidence consists of further radiodiagnostic testing (MRI scan) that confirms the prior findings reviewed by the state agency (CT scans) that you have a severe impairment resulting from your prior cerebral hemorrhage. However, Dr. Mullinix did not provide psychometric testing indicating the level of functioning resulting from your brain hemorrhage. The evidence of record relied upon by the Administrative Law Judge included two psychological consultative examinations in which there was evidence of malingering even with consideration of your impairment. The Administrative Law Judge rejected opinions from Dr. Murphy, your treating physician. The Appeals Council notes that Dr. Murphy also did not provide testing relevant to your mental functioning, but generally confined his treatment to your heart/hypertension impairments. Treatment notes from other sources such as Dr. Renee disclosed only complaints unrelated to the level of mental dysfunction that including no corroboration of the degree of dysfunction you and your sister were alleging. Reports in the record of activities of daily living such as driving, clear speech, work activity and unimpaired walking indicate a greater level of functioning than what you and your sister were alleging.

(Tr. 2).

The function of the court is to determine if substantial evidence supports the decision of the Commissioner. *Cowan v. Astrue*, 552 F.3d 1182, 1184-85 (10th Cir. 2008). In conducting this review, the court does not consider the evidence *de novo*, on the basis of the evidentiary record presented to the Commissioner. *Bradley v. Califano*, 573 F.2d 28 (10th Cir. 1978). Walker has not shown good cause for presenting any new evidence outside the

evidentiary record, and none of the evidence actually submitted to the Commissioner — including the report of Dr. Mullinix — shows that the Commissioner erroneously found that Walker was not disabled at the relevant time period.

Such evidence may be taken as evidence corroborating his second (and successful) SSI claim for the period commencing in 2011, but it does not demonstrate that the decisions of the ALJ and Appeals Council that Walker was not disabled at the time he claimed (in 2006) were not otherwise amply supported by substantial evidence. As the Appeals Council stressed, Dr. Mullinix's report lacked any confirmatory psychometric testing.

The present record contains evidence from multiple sources suggesting malingering by the claimant. In addition, the opinion submitted by Dr. Murphy was entirely conclusory, and not grounded on any direct examination after his early post-surgery follow up in 2006. As the Appeals Council noted, the plaintiff was evaluated by other medical professionals during the relevant time period, such as Dr. Rees, and no neurological deficits were noted. Further, the ALJ properly found that Walker's testimony was not fully credible, given contradicting information in the medical record. (Tr. 17).

The plaintiff himself acknowledges that he experienced a "remarkable recovery" in 2006, and only later began to experience any problems. (Dkt. 13, at 3). However, Walker has never demonstrated that these problems rose to the level of a disability for the time period reflected in his 2006 claim. Given the evidence actually presented to the Commissioner, substantial evidence supports the determination that Walker was not disabled at the time of the ALJ's decision.

9

IT IS ACCORDINGLY ORDERED this 27th day of September, 2012, that the present appeal is hereby denied.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

11